UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cr-80018-BLOOM/Valle

UNITED STATES OF AMERICA,

 Plaintiff,
v.

DENNIS BLAKE,

 Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Dennis Blake's Motion for Compassionate Release, ECF No. [43]. The Government filed its Response, ECF No. [45], to which Defendant filed a Reply, ECF No. [46] and an Amended Reply, ECF No. [47]. Following, Defendant filed a Notice of Supplemental Authority, ECF No. [48], an Amended Notice of Supplemental Authority, ECF No. [49], and four Notices of Filing, ECF Nos. [50], [51], [52], and [53], providing the Court with updates and a status of the COVID-19 health crisis at Defendant's detention center, the Jesup Federal Correctional Institution ("FCI Jesup"), in Jesup, Georgia. The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, and the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is granted.

### I. BACKGROUND

On March 31, 2015, Defendant pleaded guilty to two counts of enticing a minor to engage in sexual activity in violation of 18 U.S.C. section 2242. *See* Plea Agreement, ECF No. [29]. On June 18, 2015, Defendant was sentenced to 120 months' imprisonment followed by 10 years of

supervised release. *See* ECF No. [36]. Defendant is currently housed at FCI Jesup and is expected to be released on July 31, 2021.[1] *See* ECF No. [45] 5.

Defendant is 70 years old. He suffers from several medical conditions, including stage 4 kidney disease, sleep apnea, chronic lower back pain, hypertension, an enlarged prostate gland, high cholesterol, and esophageal reflux disease. *See* ECF No. [43] ¶ 24; Medical Records, ECF No. [43-3]. Defendant uses a CPAP machine to mitigate his sleep apnea. *See* ECF No. [43-3] 9. Defendant has also complained of renal cysts and has a family history of renal failure. *See id.*

On April 4, 2020, Defendant submitted an Inmate Request to Staff, ECF No. [45-2], requesting early release "due to the extraordinary/compelling circumstances surrounding the pandemic of Covid-19 coronavirus[,]" his age, and medical conditions. ECF No. [45-2]. According to an internal BOP email, Defendant's case manager "mistakenly failed to process [the request] through the [W]arden" and Blake was instructed to file a new request, which he did on June 4, 2020. ECF No. [45-1]. Then, according to the Government, the request "went to the medical unit rather than the Warden, and thus [was] not entered into the system for review until June 19, 2020." ECF No. [45] 14.

Defendant now seeks compassionate release under 18 U.S.C. section 3582(c)(1)(A)(i), arguing extraordinary and compelling circumstances merit his release into home confinement. *See* ECF No. [43]. In support of his motion, Defendant submits his Medical Records, ECF No. [43-3] documenting his conditions, as well as letters from his family, church, and former colleagues, *see* ECF No. [43-2], advocating for his return to the community. Defendant has supplemented his Motion with several Notices, informing the Court of the increasing numbers of

---

[1] The Government acknowledges that if Defendant was to serve his full term, he would be released in early 2025, but he is expected to be released on July 31, 2021, at which point he would have served 85 percent of his total sentence. *See* ECF No. [45] 17.

COVID-19 infections at FCI Jesup. *See* ECF Nos. [50], [51], [52], and [53]. The Notices show that as of July 13, 2020, 32 inmates at Jesup FCI had tested positive, and as of July 23, 2020, 196 inmates had tested positive and 1 inmate had died. *See* ECF Nos. [50] 7, [53] 4.

The Government opposes Defendant's request, arguing Defendant (1) has not exhausted his administrative remedies; (2) does not demonstrate extraordinary and compelling circumstances merit his release; and (3) would pose a danger to the community if released. *See* ECF No. [45].

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with over 4,800,000 confirmed cases and more than 162,000 reported deaths as of August 12, 2020.[2] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General

---

[2] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated August 12, 2020).

makes the express finding that extant emergency conditions are materially affecting BOP functioning, and directs the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II. DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, No. 19-12078, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

4

*United States v. Shaw*, 711 F. App'x 552, 554–55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, No. 19-11691, 2020 WL 398708, at *4 (11th Cir. Jan. 23, 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605–06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Here, Defendant seeks relief under the compassionate release provision of 18 U.S.C. section 3582(c)(1)(A), which provides:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. [section] 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n

2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

Accordingly,

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Defendant's request pursuant to section 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant section 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the [] movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted"). The Court analyzes Defendant's motion accordingly.

### 1. Exhaustion of Administrative Remedies

As noted, under 18 U.S.C. section 3582(c)(1)(A), a Court may modify a term of imprisonment if (1) the defendant "has fully exhausted all administrative rights to appeal a failure

of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) 30 days have lapsed from the receipt of such request by the warden of the defendant's facility. In addition, courts in this district have noted "an exception exists where the interests of the individual weigh heavily against requiring administrative exhaustion." *United States v. Lima*, No. 16-20088-CR, 2020 WL 4343836, at *1 (S.D. Fla. May 11, 2020) (citations and internal quotation marks omitted). "Exhaustion is not required where 'resorting to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action.'" *Id.* (alteration adopted, quoting *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992)); *United States of Am., v. Willie J. Hartfield, Defendant*, No. CR 12-60011, 2020 WL 4015659, at *1 (S.D. Fla. July 16, 2020) (same).

Defendant first submitted a request for compassionate release to BOP staff on April 4, 2020. *See* ECF No. [45-2]. Because of a BOP staff mistake, the request was not submitted to the Warden. *See* ECF No. [45-1]. Defendant was directed to file an additional request, which he did on June 4, 2020, *see id.*, but inexplicably, the request "went to the medical unit rather than the Warden," and was not entered into the system until June 19, 2020, *see* ECF No. [45] 14.

The Government insists Defendant has failed to satisfy the 30-day requirement because he filed the instant Motion on June 18, 2020. *See id.* 15. Yet, as of the date of this Order, 30 days have lapsed since the Warden received Defendant's request, and based on Petitioner's most recent filing, *see* ECF No. [53], there is no indication his request has been considered. Requiring Defendant to refile the same Motion now would waste judicial resources. *See United States v. Skaff*, No. 2:17-CR-00125, 2020 WL 3490074, at *1 (S.D.W. Va. June 25, 2020) ("Although [the defendant] petitioned the court on June 4, 2020, before 30 days had passed since the Warden's

receipt, I find it would be a waste of judicial resources to have [the defendant] refile the motion now that 30 days have elapsed since the Warden's receipt of the compassionate release request.").[3]

Moreover, requiring Defendant to refile a motion "may occasion undue prejudice" in this case. *Lima*, 2020 WL 4343836, at *1. In *Lima*, the court found administrative exhaustion was not required under the prejudice exception "because of the unprecedented pandemic combined with [the defendant's] high risk of severe illness or death due to her advanced age and severe medical conditions." As explained below, those circumstances are present here. Furthermore, based on the previous mishandling of Defendant's requests, the Court is not confident administrative action will occur within a reasonable or definite timeframe. *See McCarthy*, 503 U.S. at 147 (collecting cases and noting "prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action." (citations omitted)).

Accordingly, Defendant's Motion is not barred for failure to exhaust administrative remedies.

### 1. Section 3553(a) Considerations

The applicable section 3553(a) factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). Sexual offenses concerning minors are, of course, serious. Still, the fact a defendant has committed such an offense does not bar him or her from seeking

---

[3] The Court also notes *United States v. Feucht*, which relied on the theory underlying the prison mailbox rule to find the date an inmate submits a compassionate release request — instead of the date the warden receives the same — controls the calculation of the 30-day requirement under section 3582. *See* No. 11-cr-60025, 2020 WL 2781600, at *2 (S.D. Fla. May 28, 2020).

compassionate release. *See e.g., Feucht*, 2020 WL 2781600 (S.D. Fla. May 28, 2020) (granting compassionate release for an individual serving a sentence for distribution and possession of child pornography); *United States v. Asher*, No. 1:09-cr-414, 2020 WL 3424951 (N.D. Ga. June 15, 2020) (granting compassionate release for an individual serving a sentence for distributing and receiving material involving the sexual exploitation of minors and for possessing child pornography).

Here, Defendant has served more than half of his sentence of 120 months' imprisonment, and the Government states he is expected to be released in less than one year, on July 31, 2021. *See* ECF No. [45] 17. Since his incarceration, Defendant has completed several educational courses. *See id.* ¶ 9; *see also* Certificates, ECF No. [43-1]. He has not received any discipline referrals. *See id.* ¶ 8.[4] Defendant has actively participated in and contributed to the inmate community at FCI Jesup via his work in the library, teaching Portuguese, and participation a a member of FCI Jesup's church choir. *See* ECF No. [43] ¶¶ 8, 12–13. Defendant has strong ties to his community and the support of his family. *See* ECF No. [43-2]. These facts militate against a finding that Defendant continues to pose a danger to the community. *See United States v. Jaen*, No. 91-cr-00814, 2020 WL 4209283, at *3 (S.D. Fla. July 6, 2020) (granting compassionate release motion and considering the defendant's mentorship and positive influence on other inmates in considering 3553(a) factors).

While the Government emphasizes Defendant attempted to meet underage children, *see* ECF No. [45] 22, release into home confinement with electronic monitoring will mitigate this risk. Moreover, Defendant's medical conditions, discussed below, decrease his dangerousness. *See Jaen*, 2020 WL 4209283 ("the Court is not convinced that [the defendant] poses a risk of danger

---

[4] These facts are not disputed by the Government.

to the community. For one, his health makes this all but impossible.") Accordingly, the Court finds the section 3553(a) factors do not mandate Defendant's continued detention.

### 3. Extraordinary and Compelling Reasons

In light of the COVID-19 health crisis, Defendant's age and his medical conditions constitute the extraordinary and compelling reasons justifying his early release. Defendant has stage 4 kidney disease, which his medical records note is "severe," ECF No. [43-3] 3, and a host of other medical issues including sleep apnea, chronic lower back pain, hypertension, an enlarged prostate gland, high cholesterol and esophageal reflux disease. *See* ECF No. [43] ¶ 24; Medical Records, ECF No. [43-3]. Courts in this district have granted compassionate release for individuals with like medical conditions. *See United States v. Sanchez*, No. 95-00421-CR, 2020 WL 3581631, at *2 (S.D. Fla. Apr. 27, 2020) (granting compassionate release for inmate with diabetes and chronic kidney disease); *United States v. Oreste*, No. 14-20349-CR, 2020 WL 4343774, at *2 (S.D. Fla. Apr. 6, 2020) (granting compassionate release for inmate with end-stage renal failure, heart failure, diabetes, and history of pneumonia and bronchitis).

The Government insists the facts Defendant is not on dialysis and does not suffer from *pulmonary* hypertension demonstrate his medical conditions are not sufficiently severe. *See* ECF No. [45] 18–19 ("the CDC has advised that kidney disease in and of itself does not make a person at a higher risk for severe illness if exposed to the COVID-19 virus."). The Court notes updated guidance from the CDC reflects "[h]aving chronic kidney disease of any stage increases [an individual's] risk for severe illness from COVID-19."[5] Moreover, the Court does not consider

---

5 The Court takes judicial notice of the information on Center for Disease Control and Prevention's website: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#chronic-kidney-disease. "Fed R. Civ. P. 201(b) provides that a court may take judicial notice of a fact that 'is not subject to reasonable dispute' because it is either (1) 'generally known within the trial court's territorial jurisdiction' or (2) 'can be

10

Defendant's medical conditions in isolation; rather, the Court evaluates Defendant's extensive medical record as a whole and takes into account his age.

Finally, the Notices submitted by Defendant show the state of the COVID-19 crisis at FCI Jesup has worsened. According to the Government, the BOP has taken steps to mitigate the crisis, highlighting the implementation of the fifth phase of the "Coronavirus (COVID-19) Action Plan." *See* ECF No. [45] 6. The Government insists the measures taken by the BOP "are designed to mitigate sharply the risks of COVID-19 in a BOP institution." *See id.* 8. Yet, between July 13, 2020 and July 24, 2020, the number of inmate infections at FCI Jesup increased more than 600 percent. *Compare* ECF No. [50] (32 inmate infections), *with* ECF No. [53] (196 inmate infections). One inmate has already died from the virus. *See* ECF No. [53]. Based on the foregoing facts, the court concludes "[c]ontinuing to incarcerate [Defendant] is dangerous and counter-productive." *Sanchez*, WL 3581631, at *2.

### 4. Danger to the Community

The Court has already addressed Defendant's danger to the community in its analysis of the section 3553(a) factors. Defendant's severe medical condition, strong ties to the community and support of his family, and the fact Defendant will be released into home detention with electronic monitoring mitigate concerns of dangerousness.

### III. CONCLUSION

The Court concludes that Defendant has adequately demonstrated that a sentence modification is warranted in this case and his Motion is therefore granted, subject to the conditions set forth below.

---

accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Palacios v. Hartman & Tyner, Inc.*, No. 13-CIV-61541, 2014 WL 7152745, at *6 (S.D. Fla. Dec. 15, 2014).

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [43]**, is **GRANTED**.

2. Defendant's incarcerative sentence is reduced to time served. The Defendant shall be placed on supervised release consistent with his previous judgment and sentence, **ECF No. [37]**. All previous conditions imposed in the Judgment remain in full force and effect, with a special supervised release condition that he is placed on home confinement, as set forth below:

   a. **Home Detention with Electronic Monitoring** – Defendant shall participate in the Home Detention Electronic Monitoring Program for a period of **6 months**. During this time, Defendant shall remain at his place of residence except for employment and other activities approved in advance: work, medical appointments, church, and provide the U.S. Probation Officer with all requested documentation. Defendant shall maintain a telephone at his place of residence without "call forwarding," "call waiting," a modem, "caller ID," or "call back/call block" services for the above period. Defendant shall wear an electronic monitoring device and follow the electronic monitoring procedures as instructed by the U.S. Probation Officer. Defendant shall pay for the electronic monitoring equipment at the prevailing rate or in accordance with ability to pay.

3. Defendant's counsel shall work with the United States Probation Office to create an approved plan of release as soon as possible.

4. The Federal Bureau of Prisons is directed to release Defendant to the custody of his fiancé immediately after the United States Probation Office approves his release

plan. Defendant is responsible for arranging his own transportation to his family's residence and, once released, must proceed directly there to quarantine for fourteen days.

5. Defendant must report via telephone to the United States Probation Office at 305-523-5403 within 72 hours of his release.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 12, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record